UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Division

Carolyn E. O'Connor
        Plaintiff

        v.

S.O.M.E and J. Stanley, Esq., President and
CEO, and J. Stanley, Esq. as an individual,
and Altamont LLC, and other properties and it's
management under the business umbrella of
S.O.M.E., and the Directors and Officers of
S.O.M.E., as well as the Directors and Officers
individually, and John Does one through sixty
        Defendants

COMPLAINT

Case: 1:20-cv-01774   Jury Demand
Assigned To : Unassigned
Assign. Date : 6/26/2020
Description: Pro Se Gen. Civil (F Deck)

CLERK US DISTRICT & BANKRUPTCY COURTS
2020 JUN 26 AM 10: 02
RECEIVED

And so comes the Plaintiff complaining of intentional acts of Defendants, who, in their greed to obtain a higher rent for their operations, brought in Plaintiff as a tenant at 2335 Altamont Place, SE, Unit 309, Washington, D.C. 20020 (hereinafter referred to as "building"), brought Plaintiff into a rental situation whereby Plaintiff, who does not have the HIV+ virus, is deliberately exposed to other tenants who do have the HIV+ virus.

The HIV+ virus is both contagious and infectious. This is the nature of viruses, such as the Corona Virus 19, which is also contagious and infectious. However, with the case of the HIV+ virus, the injury is permanent and the lungs waste away in accordance to the individual's degree of infection. There is no cure for damaged lungs.

By deliberately placing Plaintiff into said living environment whereby she has to share bathroom and kitchen facilities with other tenants, Plaintiff is brought into exposure to tenants with said irreversible virus for which there is no cure. Plaintiff was not advised that the building that she was assigned to was completely rented to HIV+ virus infected tenants and that she was the only exception in this regard.

Plaintiff is now in circumstances whereby she cannot incur the monies to move out independently nor afford a down payment of rent anywhere. Nor obtain services to seek low income housing, without moving to a homeless shelter.

Therefore, in order to bring a higher rent into their operations, Defendants intended to injure, if not also kill Plaintiff, by the infliction of the HIV+ virus on Plaintiff by other tenants. Through past filed Civil Complaints against Defendants, Plaintiff has asked for refuge from these hazardous living situations and a change of residence whereby safety can be had, as Plaintiff is also bullied in the current residence, based on race, sex and, particularly race. As of this writing, Plaintiff is the only Caucasian in the building. Plaintiff is also stolen from, as these S.O.M.E. operations are merely a continuation from the homeless shelter system, where theft from the economically challenged by shelter personnel, is a custom and practice.

There was only one Caucasian female (HIV+ virus infected) living in said building when Plaintiff began living at said building in September 2019, and now that Caucasian female tenant has moved out early this year. Also, on or about March 2020, a Caucasian female (also HIV+ virus infected) was brought in to live on the same floor as Plaintiff, however she only lasted one month, moving out as quickly as she moved in.

Since September 2019, Plaintiff is now a prisoner in the room she rents, having no kitchen rights due to other tenant harassment and limited bathroom access. Since September 2019, Plaintiff has incurred extra expenses in order to shield herself from the HIV+ virus infected tenants, who live around her.

Plaintiff has requested a safe place to live with the S.O.M.E. housing system and, apparently a Fr. Adams (now retired) had been working on this matter, as these tenants on the 3rd floor were intended to be evicted, but eventually it was decided otherwise. Plaintiff continues to be in danger. Note Exhibit A, with enclosures.

Allegations against Defendants, is as follows:

## NEGLIGENCE BY ALL DEFENDANTS

S.O.M.E.'s management and affiliated services, did not personally interview Plaintiff prior to their approval for her residency at S.O.M.E.'s low income housing in that they did not or would not examine the unusual placement of a healthy Caucasian, who is, in and of itself, a highly unusual individual for residency at the Rev. G. Smith House, if not all their buildings, and who is not on disability, nor HIV+ virus infected and did not advise Plaintiff of the residential hazards that exist with regard to exposure to the other tenants.

Through Defendants negligence, Plaintiff is caused the continuous threat of infection/death by the HIV+ virus infected tenants who live in said building, determined to infect Plaintiff living at said residence.

Plaintiff does not have the means to move into any other types of housing except low income, but is unable to obtain the services to move nor can afford the monies necessary to effect such a move.

Therefore, as damages against all Defendants, jointly and severally, Plaintiff claims Five Hundred Million Dollars ($500,000,000.) for their negligent acts against Plaintiff.

## DISCRIMINATION BY ALL DEFENDANTS

Plaintiff has complained about being bullied by said tenants and management and this bullying is based on age, sex and race. As of this writing, Plaintiff is the only Caucasian tenant in said building, and is an elderly female.

Plaintiff has asked for relief from said bullying behavior, however S.O.M.E. management has not or will not make accommodations for said Plaintiff.

Plaintiff continues to be injured by Defendants, jointly and severally, and Plaintiff claims Five Hundred Million Dollars ($500,000,000.) as damages as a result of Defendants support of Plaintiff distress from said bullying.

## INTENTIONAL ACTS BY ALL DEFENDANTS

All Defendants, jointly and severally, participated in placing the Plaintiff in the way of harm, to be deliberately injured, if not also killed to suit their inclination for a monetary gain. Defendants, jointly and severally, by sanctioning injurious harm, if not also death to Plaintiff, also participated in sanctioning the theft of Plaintiffs belongings, and bullying Plaintiff and this bullying continues on an ongoing basis. Since September 2019, individuals have repeatedly entered Plaintiff's (Unit/Room 309), without Plaintiff's permission and stolen various items and personal papers and communications, catalogues, magazines, etc., and this theft has well exceeded the amount of $45.00 since September 2019. Plaintiff has also found that her

communications to S.O.M.E. would be subsequently hacked from her emails, allegedly by S.O.M.E. staff.

As damages against all Defendants, Plaintiff claims Five Hundred Million Dollars ($500,000,000.) for their intentional acts against Plaintiff.

### DIRECTORS AND OFFICERS LIABILITY

All of properties that come under the umbrella of S.O.M.E.'s operations, which involve the "charity" of offering low income housing to economically disadvantaged individuals, allowed all their properties to be largely dedicated to housing African-American/Black individuals, who are HIV+ virus infected, on a 90% basis, allowing the remainder of their low income housing to be offered to Hispanic individuals, who are also HIV+ virus infected.

To date, only in the Rev. G. Smith "House" has three (3) Caucasian females been "allowed" housing by S.O.M.E. Two (2) of these Caucasian females were HIV+ virus infected and who have since moved out of this residence, one of these Caucasian females moving out only after living at said building for one month. Caucasians are brutally bullied by the African-American/Black tenants, and this bullying is also initiated by the African-American/Black and Hispanic Staff.

Plaintiff is the only **non**-HIV+ infected individuals in this housing and continues to be in the way of physical danger and continues to be bullied by tenants and staff. Plaintiff does not have the funds to seek other housing and is now economically stymied where she lives.

S.O.M.E. does not intend to and has never intended this low-income housing operation of their "charitable" operations to be managed on a racially equitable basis and have insisted on discriminating against individuals who are Caucasian by race.

The Directors and Officers of S.O.M.E. are negligent in failing to monitor their operations for fairness, for the safety and protection to individuals, physically and economically.

All the Directors and Officers of S.O.M.E. has not or did not monitor their operations for equitability to all races of individuals in need.

Plaintiff is injured as a result of the indifference of said Directors and Officers of S.O.M.E. and claims Five Hundred Million Dollars ($500,000,000.) in damages.

### JOINT AND SEVERAL LIABILITY

All Defendants are, jointly and severally, liable for Plaintiffs damages.

### BAD FAITH DEALINGS BY ALL DEFENDANTS

All Defendants, jointly and severally, are dealing with Plaintiff in Bad Faith, each in their own capacity.

Plaintiff is not dealt with in honesty of purpose, freedom from malicious intent nor adherence to one's duties and obligations within the capacity of each Defendant to this lawsuit.

As damages against all Defendants, Plaintiff claims Five Hundred Million Dollars ($500,000,000.) with regard to Defendants Bad Faith dealings with Plaintiff.

## REQUEST FOR TRIAL BY JURY

Plaintiff requests trial by Jury on all issues. Trial may be bifurcated by damages and liability, etc.

In the other Civil Lawsuits filed against Defendants, Plaintiff has already been denied her court rights granted her under The Constitution of the United States - her right to trial, the right to be heard. The right for the individual to conduct their own civil case in a court of law is also sanctioned by Section 35 of The Judiciary Act of 1789.

Our Founding Fathers did not anticipate that a legal monopoly of the courts, would destroy the court rights/freedoms of the individual, but bolstered this right with the aforementioned Act, because, politically, it was understood that to withhold rights from the people is to, technically, declare war on the people.

## COMPENSATORY DAMAGES

Compensatory Damages are claimed by Plaintiff, against all Defendants, jointly and severally, in the amount of Two Billion Five Hundred Million Dollars ($2,500,000,000.), in addition to all costs, fees, including costs of collection, and any other remuneration associated with said damages and/or found for the Plaintiff by Jury, including liens on other properties and entities affiliated with S.O.M.E. to cover said Judgments/decisions and the individuals involved in said properties, as well as the Directors and Officers.

## PUNITIVE DAMAGES

Punitive Damages, are claimed by Plaintiff, against all Defendants, jointly and severally, in the amount of Two Billion Five Hundred Million Dollars ($2,500,000,000.), in addition to all costs, fees, including costs of collection, and any other remuneration associated with said damaged and/or found for the Plaintiff by Jury, including liens on other properties, and entities affiliated with S.O.M.E. to cover said Judgments/decisions and the individuals involved in said properties, as well as the Directors and Officers.

Humbly submitted to the Court,

Carolyn E. O'Connor     06/26/2020
CEO:ms

Addresses of the Parties to the lawsuit:

1.) S.O.M.E., 72 O Street, NW, Washington, D.C. 20001, Tel.: 202/797-8806 and J. Stanley, Esq., President and CEO, and all Directors and Officers of S.O.M.E.
and
S.O.M.E., Conway Center., 4430 Benning Rd., NE, Washington, D.C. 20019, Tel.: 202/797-8806
and
Altamont LLC c/o S.O.M.E., Conway Center., 4430 Benning Rd., NE, Washington, D.C.

20019, Tel.: 202/797-8806

and

S.O.M.E., 3828 S. Capitol Street, SE, Washington, D.C. 20032, Tel.: 202/797-8806

2.) J. Stanley, Esq. President & CEO and individually c/o S.O.M.E., 72 O Street. NE, Washington, D.C. 20001

3.) Carolyn E. O'Connor, 2335 Altamont Place, S.E., Unit 309, Washington, D.C. 20020, Telephone no.: 202/809-7585

Note: Enclosures are provided with regard to Plaintiff's issues - Exhibit 1, pages  5 3  .